UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

HENRY L. WALLER, JR.,

   Plaintiff,

v.

MICHAEL P. RANDLE, *Director, Illinois Department of Corrections*, et al.,

   Defendants.

Case No. 10-cv-495-JPG-SCW

# MEMORANDUM AND ORDER

This matter comes before the Court on Defendants' Motions to Dismiss (Doc. 25, 38, 59). Plaintiff Henry Waller, Jr. ("Waller") filed Responses (Doc. 35, 62, 63) thereto. Defendant Dr. Patil also filed a Reply (Doc. 40) brief.

For the following reasons, the Court, *inter alia*, **GRANTS** the instant motions.

## BACKGROUND

### I. Facts

For purposes of a motion to dismiss, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir. 2007). The Court, accepting all of Waller's allegations as true and drawing all reasonable inferences in his favor, finds as follows:

As late as 2008, Waller worked in an unspecified capacity for Tamms Correctional Center, a prison facility within Defendant Illinois Department of Corrections ("IDOC"). On

February 19, 2008, Waller took a break from his shift to pray in the prison's "G-Pod" mail room. For some unspecified reason, Defendant Lieutenant Chad Parrish did not like this. Lieutenant Parrish informed Defendant Correctional Officer George Johnson and other employees that Waller "was going to shoot somebody" instead of pray. Doc. 1, p. 6. This lie quickly spread, and Waller would soon have to speak with his supervisor, Defendant Major Charles Roper.

Because of Lieutenant Parrish's lie, IDOC immediately placed Waller on administrative leave until he was evaluated by Defendant Dr. Patil. Waller underwent such an evaluation on June 16, 2008, where Dr. Patil found him to be unfit for duty. One month later, IDOC placed Waller on unpaid medical leave of absence pursuant to Dr. Patil's findings. The forced medical leave also represented retaliation for Waller's continuous reportage of abuse of Muslim inmates' legal right to receive food on religious holidays. Dr. Patil thereafter refused to sign medical forms that would allow Waller to be paid during his "lockout."

**II.     Relevant Procedural Posture**

Waller eventually initiated four proceedings before the Equal Employment Opportunity Commission ("EEOC"). After conducting an investigation, the EEOC could not determine that Defendants had violated any statute. The EEOC subsequently sent Waller a "right-to-sue" letter for each charge on April 1 and April 2, 2010, which stated that any corresponding federal lawsuit "**must be filed <u>WITHIN 90 DAYS</u> of your receipt of [the**

**letter]; or your right to sue based on this charge will be lost."**[1] Doc. 1-1, p. 2-5 (emphasis in original). Waller received all of these letters on April 8, 2010.[2]

On July 7, 2010, at approximately 4:15 p.m., or 90 days after he received the right-to-sue letters, Waller arrived at the East St. Louis courthouse, United States District Court for the Southern District of Illinois, to file his federal lawsuit.[3] The East St. Louis courthouse, like

---

[1]As an aside, the Court notes that this information comes from matters outside of Waller's operative Complaint (Doc. 1). Ordinarily, courts may not rely upon materials outside of the pleadings when considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) without converting the motion to one for summary judgment. Fed. R. Civ. P. 12(d). There is an exception to this general rule, however, where the attached material is expressly referenced in the complaint and is central to the plaintiff's claim. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (relying upon *Venture Assocs. v. Zenith Data Sys.*, 987 F.2d 429, 431 (7th Cir. 1993)). *See* Fed. R. Civ. P. 10(c).

Here, because the right-to-sue letters were referenced in Waller's complaint, attached thereto, and have a strong bearing to the underlying claims, the Court has considered them in its review and analysis of the instant motion.

[2]This information too stems from material outside of the operative complaint. There are, however, several reasons why the Court can and will consider it.

First, in his response briefs, Waller does not dispute that he received the right-to-sue letters on April 8, 2010. Doc. 35, p. 3; Doc. 62, p. 5 ("Defendant's [sic] counsel states the Rights to Sue Letters were delivered at 4:38 p.m. on April 8, 2010. Plaintiff does not dispute the time and date."); Doc. 63, p. 10 ("[M]y official 90 days did not expire until the exact time that I received and signed for the letters at the post office at 4:38 p.m. [on April 8, 2010,] which would be the actual time of 90 days."). Second, the letters contain "certified mail numbers" that reveal a receipt date of April 8 when plugged into the United States Postal Service's website. The letters' reference to and incorporation of the certified mail numbers means that the corresponding receipt date may be considered. *See supra* note 2; Fed. R. Civ. P. 10(c). And, lastly, the Court takes judicial notice that the Postal Service's website displays a receipt date of April 8. Fed. R. Evid. 201(b); *Ray v. City of Chi.*, 629, F.3d 665 (7th Cir. 2011) ("[I]t is well established that district courts may take judicial notice of certain documents . . . when deciding motions to dismiss."); *Pugh v. Tribune Co.*, 521 F.3d 686, 691 (7th Cir. 2008). *See Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir. 2003) (collecting cases) (courts may take judicial notice of information provided on government agency's website).

[3]Dr. Patil argues that allegations concerning Waller's July 7, 2010, trip to the East St. Louis courthouse, which support an equitable tolling argument, may not be considered because they are unsupported by affidavit or evidence. Because this proposition itself is

the Benton courthouse, is "open to the public from 9:00 a.m. to 4:30 p.m., Monday through Friday, except holidays." http://www.ilsd.uscourts.gov/ (last visited May 26, 2011). Waller explained to an unidentified female employee in the Clerk of Court's office that he needed to promptly file his suit due to the looming deadline. The employee, however, told Waller that she had already shut down her computer and that "it would take time to turn on the computer and file all [of the] documents correctly[.]" Doc. 35, p. 1; Doc. 62, p. 3. *See also* Doc. 35, p. 1-2; Doc. 62, p. 3 ("There just is not enough time for me to file it today, come back in the morning when the computer is running and I have more time to file it."). She further stated that nobody could be in the office past 4:30 p.m. because of security concerns. Finally, the employee assured Waller that he would not run afoul of the 90-day deadline referenced in the right-to-sue letters because "the office was closing and the computer was already shut down when [he] arrived." Doc. 35, p. 2; Doc. 62, p. 3. Convinced that he could not force the employee to accept his documents and file the complaint, Waller left the courthouse and decided to return the next day.

On July 8, 2011, Waller filed suit in this Court against Defendants, alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5, *et seq*. The same female employee Waller had met on July 7 assisted him in filing his complaint on July 8. She again assured him that all documents were timely and correctly filed. Waller subsequently made several attempts to uncover the identity of the Clerk's office employee, but

---

unsupported by legal authority, the Court deems it waived. Moreover, the record itself indicates that Waller filed his complaint one day late; accordingly, the Court must allow him to offer equitable arguments as to why he failed to comply with the deadline. *See Rennie v. Garrett*, 896 F.2d 1062 (7th Cir. 1990).

4

his efforts proved unsuccessful. Upon entering the case, Defendants filed the instant motions, arguing, *inter alia*, that Waller did not file a timely complaint pursuant to § 2000e-5(f)(1) and that Waller's complaint fails to state a claim upon which relief can be granted pursuant to 12(b)(6).

## ANALYSIS

**I.  Timeliness of Waller's Complaint**

**A.  90-Day Statute of Limitations**

Title VII is remedial in nature, and courts should construe its provisions broadly to effectuate its purpose. *See Brown v. J.I. Case Co.*, 756 F.2d 48, 50 (7th Cir. 1985). The law states, in pertinent part, as follows:

> If a charge filed with the Commission . . . is dismissed by the Commission, . . . the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge . . . by the person claiming to be aggrieved . . . .

42 U.S.C. § 2000e-5(f)(1) (2006). In other words, a plaintiff has 90 days from the date he receives a right-to-sue letter from the EEOC to file a federal lawsuit. *See Grayson v. O'Neill*, 308 F.3d 808, 817 (7th Cir. 2002). This time limit "is not a flexible guideline even for *pro se* litigants and even a one-day delay is fatal." *Thomas v. United Parcel Serv.*, No. 99 C 6258, 2000 WL 290279, at *2 (N.D. Ill. Mar. 17, 2000).

Notably, the 90-day deadline "is not a jurisdictional requirement, . . . [i]nstead, it is a statute of limitations requirement." *Duiker v. Bd. of Trs. of Univ. of Ill.*, No. 08-3181, 2009 WL 1636993, at *1 (C.D. Ill. June 11, 2009) (citations omitted). As such, the Title VII filing requirement is subject to the doctrines of equitable tolling, estoppel, and waiver "when equity

so requires." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121 (2002) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982)) (quotation marks omitted); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 860 (7th Cir. 2005). That said, there is a general presumption that the plaintiff could have filed his complaint before the expiration of the statutory period. *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991).

**B.     Equitable Tolling**

The doctrine at issue in this case is that of equitable tolling, "which often focuses on the plaintiff's excusable ignorance of the limitations period and on lack of prejudice to the defendant . . . ." *Mull v. ARCO Durethene Plastics, Inc.*, 784 F.2d 284, 291 (7th Cir. 1986) (citation and quotation marks omitted). The applicability of equitable tolling also depends upon whether disability, irremediable lack of information, or extreme circumstances prevented plaintiff from timely filing his lawsuit. *Miller v. Runyon*, 77 F.3d 189, 191 (7th Cir. 1996).

To successfully invoke equitable tolling, the plaintiff must demonstrate that "he could not by the exercise of reasonable diligence have discovered essential information bearing on his claim." *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 452 (7th Cir. 1990). Thus, with respect to the 90-day filing requirement, the relevant question becomes clear: "Would a person in the plaintiff's position, using reasonable diligence, have known the necessary information to file within the statutory period?" *Freeman v. U.S. Postal Serv.*, No. 91 C 1459, 1991 WL 249724, at *3 (N.D. Ill. Nov. 15, 1991).

Typically, "[r]eliance on an unidentified person in the clerk's office is not enough to warrant equitable tolling." *Davis v. Browner*, 113 F. Supp. 2d 1223, 1228 (N.D. Ill. 2008) (collecting cases). Equitable tolling, however, may be applicable if the court or one of its

6

employees misleads a *pro se* plaintiff into believing he has done everything required of him or otherwise misleads him in the filing of his complaint. *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984). *See, e.g., Johnson v. Brown*, 803 F. Supp. 1414, 1419 (N.D. Ind. 1992) (collecting appellate cases); *Mumphrey v. James River Paper Co., Inc.*, 777 F. Supp. 1458, 1461 (W.D. Ark. 1991).

### C. Waller Timely Filed His Complaint

The Court finds that the 90-day statute of limitations was tolled from July 7, when Waller attempted to file his federal lawsuit at the East St. Louis courthouse, until August 26, 2010, when the Court granted Waller *in forma pauperis* status;[4] as such, Waller timely filed his complaint against Defendants. There can be no doubt that Waller pressed his luck — despite receiving ample notice of the 90-day deadline in his right-to sue letters, he did not attempt to file his lawsuit until mere minutes before the statute of limitations expired. That said, the simple fact is that Waller tendered his complaint to the Clerk of Court at a time when it *should* have been accepted and formally filed. When the unknown Clerk's office employee impliedly refused to accept the complaint during her office's normal business hours, Waller exercised all of the diligence necessary to file his lawsuit within the statutory period, thereby necessitating the application of equitable tolling. Put another way, the employee's refusal represented an "extreme circumstance" contemplated by *Miller*. Not only that, but the Clerk's

---

[4]Although Waller was originally denied leave to proceed *in forma pauperis*, Doc. 7, p. 1-2, the Court holds that the limitations period was tolled for a reasonable period of time thereafter in light of Title VII's remedial nature. *See Williams-Guice v. Bd. of Educ. of City of Chi.*, 45 F.3d 161, 165 (7th Cir. 1995). *See, e.g., Chatman v. Condell Med. Ctr.*, No. 99 C 5603, 2001 WL 881305, at *4 (N.D. Ill. Aug. 6, 2001); *Bailey v. Gilmore*, 5 F. Supp. 2d 587, 591 (N.D. Ill. 1998).

7

office employee assured Waller that he had done everything required of him so long as he came back to file the complaint on July 8, which *Baldwin County Welcome Center* and its progeny have found to support the invocation of equitable tolling. And, finally, Defendants have not seriously argued that they will suffer prejudice if the Court deems Waller's complaint timely.

Defendants rely heavily on *Thomas v. United Parcel Service*, 2000 WL 290279 (N.D. Ill. Mar. 17, 2000) for the proposition that equitable tolling should not apply to the instant case. Of course, because it is a district court decision, *Thomas* is at best persuasive. In *Thomas*, the *pro se* plaintiff filed his Title VII complaint one day late because an unidentified person in the clerk's office told him on the telephone that he could do so without adverse consequences. *Id*. at *1. The *Thomas* Court found that, despite ample notice, the plaintiff did not take adequate precautions to ensure timely filing of the complaint and ultimately held that the Title VII claim failed due to untimeliness. *Id*. at *2-3. Like the plaintiff in *Thomas*, Waller did not officially file his complaint until 91 days after he received his right-to-sue letters. Waller, however, *tried* to file his lawsuit on the 90th day but was turned away by an employee of the Clerk of Court. Had the unidentified employee not impliedly refused to file his complaint, Waller would have brought his lawsuit on time. The *Thomas* plaintiff cannot say the same, and Waller's reasonably diligent efforts adequately distinguish him from Defendants' principle case.

It bears mentioning that the Court is highly suspect of Waller's version of events. The Court has never known a Clerk's office employee to shut his or her computer down more than fifteen minutes before the end of a work day, let alone refuse a *pro se* litigant access to the

8

Court when the courthouse is open to the public. The Court also finds it difficult to believe that Waller could not find one person in the East St. Louis Clerk's office — an office that employs more than twenty individuals — to accept his complaint and file it as timely at 4:15 p.m. on a Wednesday. But, Waller has painted a portrait of futility, and, at this phase in the litigation, the Court must accept his allegations regarding refusal as true.[5] Defendants' statute of limitations argument is therefore without merit.

## II. Legal Sufficiency of Waller's Complaint

### A. Individual Liability under Title VII

The individual Defendants argue that they are immune from liability because Title VII only targets a plaintiff's employer.[6] Indeed, "a supervisor does not, in his individual capacity, fall within Title VII's definition of employer[.]" *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir.1995). *Accord Silk v. City of Chi.*, 194 F.3d 788, 797 n.5 (7th Cir. 1999). This is because Congress only intended for employers to be liable for their agent's actions under the *respondeat superior* theory of liability, not for such agents to be personally accountable. *See id.* at 554; *Gastineau v. Fleet Mortg. Corp.*, 137 F.3d 490, 494 (7th Cir. 1998). Thus, a plaintiff's individual managers or supervisors cannot be individually liable for purported violations of Title VII or other federal discrimination statutes. *Schandelmeier-Bartels v. Chi. Park Dist.*, 634 F.3d 372, 380 (7th Cir. 2011).

---

[5]As a further aside, the Court notes that Waller's additional equitable tolling arguments — concerning his lack of gainful employment and wages, his inability to pay bills, and road construction and one-lane traffic near the East St. Louis courthouse — are meritless and do not warrant application of the rarely-invoked doctrine.

[6]Dr. Patil does not expressly make this argument, but the Court assumes as much due to its obvious merit.

Here, the binding precedent discussed above clearly dictates that the individual Defendants shall be dismissed. Although Waller may view Defendants Michael Randle, Director of IDOC, and Pat Quinn, Governor of the State of Illinois, to be his employer, any recovery against said Defendants would also be available against IDOC. As such, all Defendants except IDOC will be dismissed with prejudice.

### B. Notice Pleading Generally

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Therefore, the complaint need not allege detailed facts. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007).

However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id*. (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id*. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under [Federal] Rule [of Civil Procedure] 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 550 U.S. at 563 n.8.

The complaint at issue has been brought by a *pro se* litigant, and courts must liberally

construe *pro se* pleadings. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). A *pro se* complaint is not required to explicitly refer to the proper statute or legal theory so long as relief is possible under a statute or theory and is consistent with the facts pled. *Kennedy v. Nat'l Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999); *Tolle v. Carroll Touch, Inc.*, 977 F.2d 1129, 1134 (7th Cir. 1992).

### C. Title VII Discrimination

It is very difficult to determine how Waller is proceeding under Title VII due to the complaint's brevity and lack of clarity. His complaint, however, clearly hints at a theory of religious discrimination.

To make out a *prima facie* case of discrimination under Title VII, a plaintiff must establish the following elements: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) he was treated less favorably than similarly-situated individuals who are not members of his protected class. *Barricks v. Eli Lilly & Co.*, 481 F.3d 556, 559 (7th Cir.2007). Meanwhile, to adequately *plead* a claim of gender or race discrimination, a plaintiff may allege less than is required under *Barricks*. The Seventh Circuit Court of Appeals recently instructed that "a plaintiff alleging employment discrimination . . . may allege [such] claims quite generally." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). More precisely, "in order to prevent dismissal under Rule 12(b)(6), a complaint alleging [employment] discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her [protected status]." *Id* at 1084. "[O]nce a plaintiff alleging illegal discrimination has clarified that it is on the basis of [his

protected status], there is no further information that is both easy to provide and of clear critical importance to the claim." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 782 (7th Cir.2007).

Here, Waller clearly fails to state a claim upon which relief can be granted. The only allegations that bear a tinge of religious discrimination are that Lieutenant Parrish spread the lie that Waller "was going to shoot somebody" when in fact he was going to pray in Tamms' G-Pod mail room and that Waller was reprimanded on the basis of that lie. Doc. 1, p. 6. These allegations, however, do not sufficiently plead that IDOC took adverse employment actions against Waller due to his Islamic faith. In fact, as the complaint is written, it appears that Waller was placed on unpaid leave and ultimately terminated because he was viewed to be a violent threat, not because of any religious motivation. Further, Waller's right to relief currently appears to be speculative because the complaint fails to mention whether Waller was otherwise meeting his employer's performance expectations or whether he was given less favorable treatment than similarly-situated non-Muslims. And, IDOC has not been given adequate notice of the claim asserted against it, perhaps best evidenced by the fact that the complaint does not clearly allege how its employees engaged in racial discrimination.

### D. Title VII Retaliation

Waller's complaint also appears to assert a claim of retaliation under Title VII.

To successfully prove a claim for retaliation, a plaintiff must demonstrate "(1) that [he] engaged in an activity protected by Title VII; (2) that [he] suffered an adverse action taken by the [defendant]; and (3) [that there is] a causal connection between the two, under either the direct or indirect method of proof." *O'Neal v. City of Chi.*, 588 F.3d 406, 409 (7th Cir. 2009).

Of course, bearing in mind Federal Rule of Civil Procedure 8 and *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629 (7th Cir.2007), a complaint need not allege every element of a retaliation claim for it to be legally sufficient. *Scott v. City of Chi.*, 195 F.3d 950, 951-52 (7th Cir. 1999) (citing *Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 261 (7th Cir. 1998)).

Here, like his religious discrimination claim, Waller has failed to adequately plead a claim of Title VII retaliation. The allegedly protected activity is Wallers' reportage of abuse of Muslim inmates' legal right to receive food on religious holidays, which is referenced in the complaint's prayer for relief. The complaint, however, offers no linkage whatsoever between this activity and adverse employment actions taken against Waller. The complaint also fails to allege any details about how or to whom Waller reported abuse of Muslim inmates. Put simply, the retaliation allegation appears very sketchy. Additionally, Defendants have been deprived of the necessary Rule 8 notice because the complaint does not make clear who purportedly retaliated against Waller and how they did so.

### E. Leave to Amend

The Seventh Circuit has made it clear that "[u]nless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004). The Court believes Waller *may* be able to state a claim for religious discrimination and retaliation *if* he amends his complaint and describes, in detail, how his supervisors and coworkers discriminated against him. Waller would be wise to consult the relevant statutes and case law, a sampling of which are referenced in this memorandum and order.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motions to Dismiss (Doc. 25, 38, 59), whereby the Court **DISMISSES** all Defendants except IDOC **with prejudice** and **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of this case. Further, the Court **DISMISSES** Waller's Complaint (Doc. 1) **without prejudice** and **GRANTS** Waller leave to file an amended complaint no later than July 15, 2011. If Waller does not file an amended complaint by said date, this matter shall be dismissed without prejudice and corresponding judgment shall enter. The Court **DENIES as moot** IDOC's argument concerning the alleged unavailability of punitive damages. Additionally, the Court **DENIES as moot** Dr. Patil's Motion for Extension of Time (Doc. 69) and Defendants' Motion for Extension of Time (Doc. 68) except insofar as it relates to IDOC.

**IT IS SO ORDERED.**
**DATED: May 31, 2011**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**
